**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| MAUREEN KASSIMALI; LUZ MARIA ALVAREZ; ADRIANA ARANGO; SUSIE ATKINSON; LAURA AVERY; MARTHA BEASLEY; VANESSA BLAIR; WARREN DOUGLAS BLEMKER, Individually and as Husband and Next Friend of the Estate of SANDRA BLEMKER, deceased; CATALINA BODIRIAU; SHARON CARROLL; SHERRY LENIE CHAPMAN; GURDEV CHERRA, Individually and as Husband and Next Friend of the Estate of NARINDER CHERRA, deceased; DIANE COOMER, Individually and as Representative of the Estate of NETTIE BACKHOFF, deceased; BETSY CORCORAN; DEBORAH CRUSE; DIANA DAVILA; LONNETTE DUELL; DANA FINLEY; LEZLIE FLETCHER; CLAUDIA FLORES; DIXIE FLORES; REBECCA FOURNIER; ANNA GARDNER; M'LISSA GARDNER; BARBARA GONZALES; ERIKA GONZALES; JEANNE GORDON; BRENDA GUMM; DEBORAH K. HARRIS; SHELLY HEUERTZ; LYNNE HOLMES; HALEY HOUSTON; BERNA HUTCHINSON; ELIZABETH HURTADO; ALCHAI JONES, Individually and as Daughter and Next Friend of the Estate of NETRA JONES, deceased; TERESITA JUANITEZ; WILMA JUDY; CINDY KIMPLE; MINDY KOENTOPP; STANLEY KOWALEWSKI, Individually and as Executor of the Estate of GERALDINE KOWALEWSKI, deceased; CYNTHIA LANZ; RAMONA LARRAMENDY; CATHY LEE; ELAINE LIGHT; MARK LIU, Individually and as Husband and Next Friend of the Estate of GINGER BIAN, deceased; LINDA MARTIN; ELIZABETH MARTINEZ-BAEZA; SHELAH MATTIA; MARY MEDINA; KIMBERLY METTETAL; SUSAN MUNTER; EDWIN NELSON, | Case No. 4:18-cv-00014<br><br>**JURY TRIAL DEMANDED** |

1

Individually and as Husband and Next Friend of the Estate of CHARLOTTE NELSON, deceased; ERIN O'KEEFFEE; KATHLEEN OLSON; EUGENIA PEARSON; LORRAINE PETROVEY; ANDREA PLAEP VARGAS; CAROL POULIN; TINA RAVENEL; MARY ROACH; MARY RODRIGUEZ; CHERYL ROLLAND; ANTONIETTA SAKCRISKA; IRENE SANCHEZ; REBECCA SEDAR; LUCRETIA SILVERS; MARIE SIMPSON; THEODORE SKIDMORE, Individually and as Son and Next Friend of the Estate of SALLY SKIDMORE, deceased; JANET SMITH; NANCY STEPPER, Individually and as Administrator of the Estate of SUZANNE STEPPER, deceased; SUSAN TALVACCHIO; DEBBIE TAYLOR; TONI TUCKER; REGINA VOUDREN; TAMMY WAGNER, Individually and as Personal Representative of the Estate of CATHERINE BRUEMMER, deceased; TRAUTE WATSON; SUZANNE WILSON; WILLIAM WINGO, Individually and as Husband and Next Friend of the Estate of LYNDA WINGO, deceased; and DARLA WOODWARD,

  Plaintiffs,

v.

JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER INC., f/k/a JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; IMERYS TALC AMERICA, INC. f/k/a LUZENAC AMERICA, INC.; PTI UNION, LLC, d/b/a PHARMA TECH INDUSTRIES; and PTI ROYSTON, LLC, d/b/a PHARMA TECH INDUSTRIES,

  Defendants.

## **NOTICE OF REMOVAL**

2

Defendants Johnson & Johnson ("J&J") and Johnson & Johnson Consumer Inc., f/k/a Johnson & Johnson Consumer Companies, Inc. ("JJCI") (collectively, the "Johnson & Johnson defendants"), by their undersigned attorneys, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, to the United States District Court for the Eastern District of Missouri.

This is one of dozens of cases pending in federal courts around the country in which plaintiffs allege that the use of talc products caused their ovarian cancer.  On October 4, 2016, the Judicial Panel on Multidistrict Litigation issued an order establishing MDL No. 2738, *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation*, before Judge Freda L. Wolfson in the United States District Court for the District of New Jersey, to coordinate pretrial proceedings in these cases.  The Johnson & Johnson defendants intend to seek the transfer of this action to that proceeding, and will shortly provide the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in the MDL Panel's rules.

As set forth below, complete diversity of citizenship exists in this case because:  (1) PTI Union, LLC d/b/a Pharma Tech Industries ("PTI Union"), the only Missouri-based defendant, is fraudulently joined; (2) 77 plaintiffs (including all the plaintiffs who are not diverse from the other named defendants) should be dismissed for lack of personal jurisdiction because they do not allege that they or their decedents purchased or used the talc products in Missouri; (3) one Illinois plaintiff (Maureen Kassimali, who alleges some vague connection between her alleged injuries and Missouri) is completely diverse from all of the defendants; and (4) PTI Royston, LLC d/b/a Pharma Tech Industries ("PTI Royston") is fraudulently joined as to the remaining

3

Missouri plaintiffs because it is immune from liability under the contract-specifications defense. In addition, the other requirements for removal are also met, as further elaborated below.

For these reasons, the Court should exercise subject-matter jurisdiction over a narrowed case involving one Missouri plaintiff and one Illinois plaintiff against the J&J defendants and Imerys Talc America, Inc. ("Imerys").

## NATURE OF THE ACTION

1. This is a personal injury product liability action that includes 79 plaintiffs from 22 different states. Plaintiffs allege that they or their decedents developed an unspecified subtype of ovarian cancer as a result of applying "talcum powder" products (including JJCI's Baby Powder® and/or Shower-to-Shower®) to their perineal areas. Plaintiffs and/or their decedents allegedly developed ovarian cancer at different dates and times as a result of using different amounts of the products for different durations of time. Plaintiffs have filed claims against five defendants: the Johnson & Johnson defendants, Imerys (the alleged talc supplier for the Johnson & Johnson defendants), and PTI Union, LLC and PTI Royston, LLC (collectively "the PTI entities") (the alleged contract manufacturers of certain talcum powder products).

2. Only one of the 79 plaintiffs is a resident of Missouri (Eugenia Pearson), whose claims are properly subject to personal jurisdiction in this Court. (Pet. ¶ 56.)[1]

3. One Illinois plaintiff (Maureen Kassimali) alleges that she purchased and applied talcum powder products in Missouri and other states at unspecified times, but she is diverse from all the defendants. (*Id.* ¶ 2.)

---

[1] Plaintiff Tammy Wagner alleges that she resides in Missouri and purports to bring a wrongful death claim on behalf of a decedent's estate. (Pet. ¶76.)  However, this plaintiff provides no specific information about the decedent's alleged usage of "talcum powder" products or the decedent's development of ovarian cancer. (*See id.*) Therefore, Ms. Wagner has not plausibly alleged the requisite connection between the claims being asserted and the defendants' alleged activities in Missouri to establish personal jurisdiction.

4

4. The Johnson & Johnson defendants are, and were at the time plaintiffs commenced this action, corporations organized under the laws of the State of New Jersey with their principal places of business in the State of New Jersey, and are therefore citizens of the State of New Jersey for the purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

5. Imerys is, and was at the time plaintiffs commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business in the State of California, and is therefore a citizen of the States of Delaware and California for the purposes of determining diversity.  *Id.*

6. PTI Union, LLC d/b/a Pharms Tech Industries ("PTI Union") is alleged to be a citizen of Missouri and is also based in Missouri, but it has been fraudulently joined because none of the plaintiffs alleges use of the only product that was manufactured at the PTI Union facility, Shower To Shower® Shimmer Effects™.  (Decker Aff. ¶¶ 4, 7 (attached as Exhibit A).)

7. PTI Royston, LLC d/b/a Pharma Tech Industries ("PTI Royston") is alleged to be a citizen of Missouri for purposes of considering diversity jurisdiction because some of its members reside in the State, but it is not "at home" in Missouri for purposes of personal jurisdiction because it is based in Georgia and incorporated in Delaware, and it is fraudulently joined as to the one Missouri plaintiff whose claims support the exercise of personal jurisdiction because it is immune from liability under the contract-specifications defense.

8. Although there are a handful of plaintiffs from California and New Jersey, who share the same citizenship as Imerys and the J&J defendants, those plaintiffs' claims should be dismissed for lack of personal jurisdiction.

9. Thus, this Court should exercise subject-matter jurisdiction over a narrowed case that includes only:  (1) the sole Missouri plaintiff whose claims can support the exercise of

5

personal jurisdiction; (2) the one Illinois plaintiff who alleges some connection between her purported injuries and the defendants' supposed activities in Missouri; (3) the J&J defendants; and (4) Imerys.  All of these parties are completely diverse.

I.      **REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT-MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.**

   A.      **PTI Union Is Fraudulently Joined.**

   10.     PTI Union is fraudulently joined because it only manufactured one talc product for JJCI, Shower To Shower® Shimmer Effects™, and there is no allegation that any plaintiff ever purchased Shimmer Effects, much less that any plaintiff was sufficiently exposed to that product such that it could have been a cause of injury.

   11.     Under Eighth Circuit law, joinder is fraudulent and removal is proper when "there exists no reasonable basis in fact and law supporting a claim against the resident defendants." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002).

   12.     As other courts have recognized, when seeking to join an in-state product manufacturer or distributor to defeat diversity jurisdiction, the plaintiff must plausibly "allege a causal connection between the injury and the conduct of that defendant" – i.e., that the ***specific*** defendant actually "contributed in [some] way to her injuries[.]"  *Aronis v. Merck & Co.*, No. Civ. S-05-0486 WBS DAD, 2005 WL 5518485, at *1 (E.D. Cal. May 3, 2005) (finding fraudulent joinder because the plaintiff only alleged that "'Vioxx is manufactured and distributed by the defendants'") (quoting complaint); *see also, e.g.*, *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 552 (E.D. Ky. 2001) (defendant pharmacies were fraudulently joined; "Plaintiffs' complaint fails to connect the defendant pharmacies with plaintiffs' acquisition of OxyContin.  Absent such an allegation, plaintiffs cannot establish proximate cause and their claim against the pharmacies fails as a matter of law."); *Butner v. Boehringer Ingelheim Pharm.,*

6

*Inc. (In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.)*, No. MDL 2385, 2013 U.S. Dist. LEXIS 24313, at *28-29 (S.D. Ill. Feb. 22, 2013) (finding fraudulent joinder where the plaintiffs did "not allege that [the defendant] distributed or supplied the Pradaxa *that caused their alleged injuries*") (emphasis added).

13. Here, plaintiffs' Petition is completely devoid of any claims that any plaintiff ever used a product manufactured by PTI Union LLC. As the Petition expressly states in its opening paragraph, these plaintiffs' claims concern "Johnson & Johnson Baby Powder and Shower to Shower." (Pet. ¶ 1.) But PTI Union's involvement in the manufacture of talc products in Missouri extended only, if at all, to a different product – Shower to Shower® Shimmer Effects™ – that was on the market only from 2005 to 2010. (Decker Aff. ¶¶ 4, 7.) Nowhere in the Petition do plaintiffs suggest that any of them ever used this product perineally. This is no surprise. The Shimmer Effects™ product was designed with an ingredient intended to give the user a sparkling or shimmering effect when applied to the skin (*id.* ¶ 4) and was thus likely to be applied to visible portions of the body rather than used perineally.

14. Because plaintiffs have failed to plausibly connect any purported misconduct by PTI Union to their own alleged injuries in this case, there is no reasonable possibility that they could recover against that defendant, and it is therefore fraudulently joined.

### B. The Court Should Dismiss The Claims Of All Plaintiffs Whose Claims Are Unrelated To Missouri.

15. The Court should also dismiss for lack of personal jurisdiction the claims asserted by the 77 plaintiffs (including the plaintiffs from New Jersey and California who would otherwise defeat diversity jurisdiction) who fail to allege any meaningful connection between their purported injuries and the defendants' alleged conduct in Missouri.

7

16.     *First*, the J&J defendants, Imerys and PTI Royston are not subject to general jurisdiction in Missouri under the exacting standards the U.S. Supreme Court set forth in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), and recently reiterated in *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549, 1558-59 (2017).  Under *Daimler*, an out-of-state defendant is only subject to general jurisdiction in the forum state if its contacts with that state "are ***so constant and pervasive 'as to render [it] essentially at home in the forum State***.'"   134 S. Ct. at 751 (alteration in original) (emphasis added) (citation omitted).

17.     A corporation generally is "at home" only in its place of incorporation and principal place of business.  *Id.* at 760; *see also Sonera Holding B.V. v. Cukurova Holding A.S*, 750 F.3d 221, 223 (2d Cir. 2014) (stating that *Daimler* "reaffirms that general jurisdiction extends beyond an entity's state of incorporation and principal place of business only in the ***exceptional case*** where its contacts with another forum are so substantial as to render it 'at home' in that state") (emphasis added).  Likewise, a limited liability company "will only be subjected to general jurisdiction in the state of its organization and principal place of business." *Miller v. Native Link Construction, LLC*, No. 15-1605, 2017 WL 3536175, at *30 (W.D. Pa. Aug. 17, 2017) (citing *Finn v. Great Plains Lending, LLC*, No. CV 15-4658, 2016 WL 705242, at *3 (E.D. Pa. Feb. 23, 2016)).[2]  In other words, "in-state business . . . does not suffice to permit the assertion of general jurisdiction."  *BNSF*, 137 S. Ct. at 1559; *see also State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 48 (Mo. 2017) ("Norfolk's activities in Missouri are only a very small part of its overall activities, and not of the nature that makes Missouri its de facto

---

[2]     Removing defendants acknowledge that some courts have concluded that general jurisdiction can also be based on where the LLC's members are located, but these cases improperly "blur[] principles of diversity jurisdiction and minimum contacts and ignore[] the Supreme Court's prohibition on 'talismanic jurisdictional formulas.'"  *Carruth v. Michot*, No. A-15-CA-189-SS, 2015 WL 6506550, at *7-8 (W.D. Tex. Oct. 26, 2015) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985)) (concluding that LLC defendants should be treated akin to corporations for general jurisdiction purposes).

principal place of business.  Missouri courts may not assert general jurisdiction over Norfolk in the underlying case.").

18. Here, none of the properly joined defendants is incorporated or headquartered in Missouri, as plaintiffs acknowledge in their Petition.  (Pet. ¶¶ 82, 84, 87.)  For example, with respect to the Johnson & Johnson defendants, plaintiffs merely allege that they "regularly transacted, solicited, and conducted business" in all states including Missouri and that all defendants introduced talc products "into interstate commerce with knowledge and intent that such products be sold in all States, including . . . Missouri."  (*Id.* ¶¶ 82, 84, 94.)  These boilerplate allegations come nowhere close to establishing general jurisdiction under the exacting standards set forth in *Daimler* and its progeny.

19. ***Second***, defendants are also not subject to specific jurisdiction in Missouri as to the claims of the 77 plaintiffs who do not allege that their purported injuries arose out of defendants' supposed activities in Missouri..  Specific jurisdiction can only be exercised consistent with due process where the defendant's in-state activities have "'g[iven] rise to the liabilities sued on.'"  *Daimler*, 134 S. Ct. at 761 (citation omitted); *see also Denton v. Air & Liquid Sys. Corps.*, No. 13-cv-1243-SMY-DGW, 2015 WL 738659, at *1 (S.D. Ill. Feb. 19, 2015) ("Specific jurisdiction arises where an out-of-state defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.") (internal quotation marks and citation omitted); *Guillette v. PD-RX Pharm. Inc.*, No. 5:15-cv-00564-R, 2016 WL 3094073, at *5 (W.D. Okla. June 1, 2016) ("Plaintiffs must show some 'true causal element' between the Defendant' contacts and the litigation.") (citation omitted).

9

20. The United States Supreme Court's recent ruling in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017), confirmed that specific jurisdiction is lacking over defendants with respect to product-defect claims asserted by plaintiffs whose claims have no connection to the forum where an action is commenced, regardless of whether those plaintiffs join their claims with plaintiffs whose claims have some connection with the forum. As the Court explained:

> [T]he nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California – and allegedly sustained the same injuries as did the nonresidents – does not allow the State to assert specific jurisdiction over the nonresidents' claims. . . . This remains true even when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents. . . . What is needed – and what is missing here – is a connection between the forum and the specific claims at issue.

*Id.*

21. Lest there be any doubt as to the applicability of *Bristol-Myers* to this litigation, the Missouri Court of Appeals recently reversed and vacated the judgment in a similar talc case, *Fox v. Johnson & Johnson*, 2017 WL 4629383 (Mo. App. Oct. 17, 2017), on the ground that the Circuit Court did not have personal jurisdiction over the claims of an out-of-state plaintiff who had joined her claims in a multi-plaintiff case like one. *See also Jinright v. Johnson & Johnson*, No. 4:17CV-1849, 2017 WL 3731317, at *5 (E.D. Mo. Aug. 30, 2017) ("Nonresident Plaintiffs have failed to sufficiently show Defendants' relationship with Missouri to create jurisdiction over Defendants. All they have shown is a connection with a third party in Missouri. This is not enough to create specific jurisdiction for nonresidents' claims.")

22. This case is no different. Only two plaintiffs (both of whom are diverse from the properly joined defendants in this case) allege injuries that could have arisen from the defendants' activities in Missouri. None of the remaining 77 plaintiffs allege that they or their

decedents purchased or were injured by defendants' products in Missouri.  As *Bristol-Myers* recognized, the mere fact that these 77 plaintiffs have joined their claims with those of a single Missouri plaintiff whose claims support personal jurisdiction does not suffice to give rise to personal jurisdiction over the defendants with respect to their claims.  Consequently, defendants are not subject to specific jurisdiction in Missouri for these 77 plaintiffs' claims.  *See Bristol-Myers*, 137 S. Ct. 1782; *see also Jinright*, 2017 WL 3731317, at *5 ("Nonresident Plaintiffs have failed to sufficiently show Defendants' relationship with Missouri to create jurisdiction over Defendants. All they have shown is a connection with a third party in Missouri.  This is not enough to create specific jurisdiction for nonresidents' claims.")

23.     ***Third***, this Court may decide the issue of personal jurisdiction before determining whether it has subject-matter jurisdiction.  The Supreme Court has explained that "there is no unyielding jurisdictional hierarchy," and that after a case is removed, the federal court may decide a "straightforward personal jurisdiction issue presenting no complex question of state law" prior to deciding whether it has subject-matter jurisdiction.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578, 588 (1999); *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (explaining that "there is no mandatory 'sequencing of jurisdictional issues'" and that "[i]n appropriate circumstances . . . a court may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction") (citing *Ruhrgas*, 526 U.S. at 578, 584).  That is precisely what other federal courts have done, even before *Bristol-Myers* clarified the law on personal jurisdiction in multi-plaintiff cases.

24.     Notably, a court in this District took this exact approach to dismiss the claims of non-Missouri plaintiffs who failed to allege the requisite connection with Missouri to support personal jurisdiction.  *See Beard v. Smithkline Beecham Corp.*, No. 4:15-CV-1833-RLW, 2016

11

WL 1746113, at *2 (E.D. Mo. May 3, 2016).  As here, *Beard* involved a multi-plaintiff personal injury case filed in the City of St. Louis that included the claims of multiple non-Missouri plaintiffs.  The case was removed to the Eastern District of Missouri, and the defendant promptly objected to the exercise of personal jurisdiction over it as to the claims of the non-Missouri plaintiffs.  Judge White agreed that Missouri courts lacked personal jurisdiction over the claims of the non-Missouri plaintiffs, stating:

> This Court, however, agrees with more recent judicial precedent from the United States Supreme Court and this district that have determined that more substantial contacts are required to hale a litigant into the court's forum.  The extent of Plaintiff's allegations is that GSK marketed and sold Paxil in Missouri.  These facts are much less than was alleged in *Daimler* and, therefore, personal jurisdiction cannot be found here.  Simply marketing and selling a product in a state does not make the defendant's affiliations with the state so "continuous and systematic as to render them essentially at home in the forum state." . . . . Plaintiffs have not alleged that they were sold Paxil in Missouri or that they ingested Paxil in Missouri.  In fact, Plaintiffs have not alleged any connection between Missouri and their injuries.  Plaintiffs have not alleged any facts supporting a finding of personal jurisdiction and the Court finds that such jurisdiction does not exist.

*Id.* at *2 (citations omitted).  Accordingly, Judge White granted the motion in part, severed the cases, and transferred the claims of the out-of-state plaintiffs to their home venues.  *See also Jinright*, 2017 WL 3731317, at *5 (dismissing nonresident plaintiffs' claims for lack of personal jurisdiction).

25.     A similar result obtained in an MDL court in the Northern District of Illinois.  *See In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, 164 F. Supp. 3d 1040 (N.D. Ill. 2016), *reconsidered in part on other grounds*, No. 14 C 1748, 2016 WL 861213 (N.D. Ill. Mar. 7, 2016).  In that case, "ten unrelated individuals from nine different states" brought suit in Missouri state court against AbbVie Inc. and Abbott Laboratories (both Delaware corporations with their principal places of business in Illinois), alleging injuries from using the drug AndroGel.  *Id.* at 1042.  After the suit was removed to the Eastern District of

Missouri on diversity grounds, it was transferred to the MDL proceeding in the Northern District of Illinois. *Id.* at 1043. The plaintiffs moved to remand to state court due to a lack of diversity because one of the non-Missouri plaintiffs was an Illinois citizen. *Id.* The MDL court decided personal jurisdiction before assessing its subject-matter jurisdiction because the former was "more straightforward" and did "not present a 'complex question of state law,'" while the latter was "rather complicated" due to the fraudulent misjoinder issue. *Id.* at 1045-46 (citations omitted). The court then held that Missouri lacked specific jurisdiction over the non-diverse plaintiff because he did not allege that he had purchased or used AndroGel in Missouri and the defendant's sales of AndroGel to other consumers in Missouri related to his claims "only in the abstract or by analogy." *Id.* at 1048. The court accordingly dismissed that plaintiff, creating complete diversity between the defendant and the remaining plaintiffs, and denied the plaintiffs' motion to remand. *Id.* at 1049-50; *see also, e.g.*, *In re Zofran (Ondansetron) Prods. Liab. Litig.*, No. 1:15-cv-13760-FDS, 2016 WL 2349105, at *3-5 (D. Mass. May 4, 2016) (deciding personal jurisdiction first and denying motion to remand where defendant was not subject to general jurisdiction in Missouri and non-diverse plaintiff's claims did not arise out of the defendant's contacts with Missouri); *Guillette*, 2016 WL 3094073, at *2, *5 (deciding "straightforward" personal jurisdiction issue before determining subject-matter jurisdiction and dismissing claims of non-Oklahoma plaintiffs who allegedly were injured from ingesting propoxyphene-containing products in other states); *Manning v. PD-Rx Pharm. Inc.*, No. 5:15-cv-00566-R, 2016 WL 3094075, at *2, *5 (W.D. Okla. June 1, 2016) (same); *Nauman v. PD-RX Pharm. Inc.*, No. 5:15-cv-00567-R, 2016 WL 3094081, at *2, *5 (W.D. Okla. June 1, 2016) (same).

13

26. The Court should take the same approach here and dismiss the claims asserted by the 77 plaintiffs who do not allege that they or their decedents purchased or used the talcum powder products in Missouri before completing its analysis of subject-matter jurisdiction.

### C. PTI Royston Is Fraudulently Joined As To The Remaining Missouri Plaintiff.

27. The Court should also disregard the citizenship of PTI Royston because it is immune from liability under the contract specifications defense, rendering it fraudulently joined.

28. Plaintiffs argue that PTI Royston is liable under a theory of strict liability failure to warn, strict liability defective manufacture and design, and negligence, because it manufactured talcum powder under contract from JJCI in Royston, Georgia. But under Missouri law, PTI Royston cannot be held liable for its actions because it was a contracted manufacturer, and Missouri's contract specifications defense holds that contract manufacturers "cannot be held liable for producing a product with specifications that are beyond [their] control[.]" Am. Jur. Products Liability § 1385.

29. The contract specifications defense safeguards a manufacturer from liability for injuries allegedly caused by a defect in a product it manufactures in accordance with specifications and plans supplied by a purchaser, as long as the alleged defect is not obvious. The Restatement (Second) of Torts provides that an independent "contractor is not required to sit in judgment on the plans and specifications or the materials provided by his employer" and is not liable for their insufficiency unless the design or material specified "is so obviously bad that a competent contractor would realize that there was a grave chance that his product would be dangerously unsafe." *See* RESTATEMENT (SECOND) OF TORTS § 404 cmt. a (1965).

30. Consistent with this principle, Missouri decisions have expressly held that "[c]ompliance with contract specifications shields a manufacturer from [strict and negligence]

14

liability for injuries caused by a design defect in products it manufactures pursuant to plans and specifications supplied by the purchaser." *Hopfer v. Neenah Foundry*, 477 S.W.3d 116, 124 (Mo. App. 2015) (internal quotation marks and citations omitted); *see also Bloemer v. Art Welding Co.*, 884 S.W.2d 55, 56 (Mo. Ct. App. 1994) (holding that "a contractor's compliance with its customer's plans and specifications is . . . a complete defense to strict liability and negligence claims[.]").

31. That is the case here. Indeed, plaintiffs expressly allege that PTI Royston "act[ed] at the direction of or on behalf of the Johnson & Johnson Defendants." (Pet. ¶ 92.) Under the rule expressed in *Hopfer*, such alleged action taken in "[c]ompliance with contract specifications" from the Johnson & Johnson defendants cannot give rise to liability.

32. Holding PTI Royston liable for these claims would also be illogical from a public policy perspective. Imposing liability on manufacturers that are providing a product pursuant to the plans and specifications provided to them by their client would require manufacturers to scrutinize, among other things, the chemistry and labeling of the product, and employ experts to review and evaluate the soundness of the plans and specifications as well as the proposed use of the product. "[T]o hold [a contractor] liable for defective design would amount to holding a non-designer liable for design defect. Logic forbids any such result." *Bloemer*, 884 S.W.2d at 59.

33. Plaintiffs also allege that "all Defendants" are liable under theories of breach of implied warranties, civil conspiracy, and concert of action. There are no particularized allegations against PTI Royston to support recovery based on breach of warranties, civil conspiracy, or concert of action. *See, e.g.*, *Royster v. Baker*, 365 S.W.2d 496, 500 (Mo. 1963) ("The 'grounds or gravamen' of an action for civil conspiracy 'must be set out with the same certainty and particularity as in an ordinary civil action"); *Mullen v. Starr*, 537 F. Supp. 945, 948

(W.D. Mo. 1982); *Thomas v. Brown & Williamson Tobacco Corp.*, 2006 WL 1194873, at *3 (W.D. Mo. Apr. 28, 2006). In any event, these claims are non-starters as to a contract manufacturer like PTI Royston for the same reasons that courts have barred strict liability and negligence claims against them. *See Hopfer*, 477 S.W.3d at 124.

34. Because PTI Royston is immune from liability to plaintiffs, it is fraudulently joined, and the sole Missouri plaintiff whose claims give rise to personal jurisdiction is fully diverse from all properly joined defendants.

D. **The Amount In Controversy Exceeds $75,000.**

35. Plaintiffs allege that each of them developed ovarian cancer as a result of applying "talcum powder" products to her perineal area. They also claim that they were "injured catastrophically and have been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort and economic damages." (*See, e.g.*, Pet. ¶ 144; *see also id.* ¶ 203 (claiming that plaintiffs "were caused to incur medical bills, lost wages, and conscious pain and suffering"); *id.* ¶¶ 237-45 (claiming damages for negligent misrepresentation, including "severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care and comfort, and economic damages").) Plaintiffs also request punitive damages (*id.* ¶¶ 251-53), which are included in the amount in controversy *see Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount.").

36. Where, as here, plaintiffs allege serious bodily injuries and/or chronic or permanent medical conditions, courts have readily found that the amount-in-controversy requirement is satisfied. *See, e.g.*, *Allmon v. Walgreens Co.*, No. 4:09 CV 1151 DDN, 2010 WL 1292172, at *1 (E.D. Mo. Apr. 5, 2010) (holding amount-in-controversy requirement satisfied

where plaintiff alleged "extreme weight loss, stunted growth, menstrual problems, ovarian cysts, and diabetes"); *Quinn v. Kimble*, 228 F. Supp. 2d 1038, 1041 (E.D. Mo. 2002) (finding that a jury could award more than $75,000 "given that plaintiffs suffered head, neck, and back injuries; incurred medical expenses and will incur further such expenses; have permanent, progressive, and disabling injuries;" and alleged lost wages).

## II. THE JOHNSON & JOHNSON DEFENDANTS HAVE COMPLIED WITH ALL REMOVAL PROCEDURES.

37. The Johnson & Johnson Defendants received service of the summons and Petition on January 2, 2018. Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within 30 days of such service.

38. The Circuit Court for the City of St. Louis, Missouri is located within the Eastern District of Missouri. *See* 28 U.S.C. §§ 105(a)(1), 1441(a). Therefore, venue is proper pursuant to 28 U.S.C. § 93(c) because it is the "district and division embracing the place where such action is pending." *See* 28 U.S.C. § 1441(a).

39. Pursuant to Local Rule 81-2.03 and 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other documents on file with the Circuit Court for the City of St. Louis are attached hereto as Exhibit B.

40. Co-defendant Imerys Talc America, Inc. f/k/a Luzenac America, Inc.'s consent to this Notice of Removal is attached hereto as Exhibit C.[3]

WHEREFORE, the Johnson & Johnson defendants respectfully remove this action from the Circuit Court of the City of St. Louis, in the State of Missouri, bearing the cause number 1722-CC10919, to this Court.

Dated: January 4, 2018                                    Respectfully submitted,

---

[3] Because the PTI entities were fraudulently joined, their consent is not required.

17

**HEPLERBROOM LLC**

By: /s/ Beth A. Bauer
    Beth A. Bauer, #49981
    130 N. Main Street
    PO Box 510
    Edwardsville, IL 62025
    (618) 656-0184
    (618) 656-1364 – Facsimile
    bab@heplerbroom.com

**SHOOK, HARDY & BACON LLP**

    Mark C. Hegarty, #40995
    2555 Grand Blvd.
    Kansas City, MO 64108-2613
    (816) 474-6550
    (816) 421-5547 - Facsimile
    mhegarty@shb.com

*Attorneys for Johnson & Johnson and Johnson & Johnson Consumer Inc., formerly known as Johnson & Johnson Consumer Companies, Inc.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 4th day of January 2018, a true and correct copy of the foregoing document was served upon the following via the Court's electronic notification system, electronic mail, and/or U.S. Mail, postage prepaid:

| | |
|---|---|
| James G. Onder | Mary Anne Mellow |
| William W. Blair | Mark A. Prost |
| Stephanie L. Rados | **Sandberg Phoenix & von Gontard P.C** |
| **Onder, Shelton, O'Leary & Peterson, LLC** | 600 Washington Avenue - 15th Floor |
| 110 East Lockwood, Second Floor | St. Louis, MO 63101 |
| St. Louis, MO 63119 | (314) 446-4226 |
| (314) 963-9000 | mmellow@sandbergphoenix.com |
| (314) 963-1700 – Fax | mprost@sandbergphoenix.com |
| onder@onderlaw.com | |
| blair@onderlaw.com | |

rados@onderlaw.com

***Attorneys for Plaintiffs***                                      ***Attorneys for Imerys Talc America, Inc.***

Caroline M. Tinsley
**Baker Sterchi Cowden & Rice, L.L.C.**
1010 Market Street, Suite 950
St. Louis, MO 63101
(314) 231-2925
(314) 231-4857 – Fax
tinsley@bscr-law.com

***Attorneys for PTI Union, LLC and PTI Royston, LLC***

               /s/ Beth A. Bauer